**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1570-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHEED D. SHARPE, a/k/a
RASEED FAULKNER, RASHEED
HAWKINS, and RASHEED
FAULKNER,

     Defendant-Appellant.

_____

Argued October 31, 2018 - Decided November 28, 2018

Before Judges Koblitz and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-01-0172.

Michael T. Denny, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael T. Denny, of counsel and on the brief).

Dylan P. Thompson, Assistant Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic

County Prosecutor, attorney; Dylan P. Thompson, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Rasheed D. Sharpe appeals from his September 22, 2016 conviction of first-degree robbery, N.J.S.A. 2C:15-1, focusing on a March 29, 2016 order denying his motion to suppress three out-of-court identifications. We affirm.

We review the facts relevant to defendant's appeal. Two home invasions occurred on the same evening in Atlantic City, approximately one hour apart. Four witnesses gave accounts of the home invasions. Each witness described the two black males who entered their home. One male was described as five foot ten inches tall, with a birthmark or tattoo under his right eye, and wearing a black hooded sweatshirt. The other man was depicted as five foot five or six inches tall and wearing a gray sweatsuit. The men did not wear masks and were passing a gun back and forth during the robberies. The victims gave nearly identical descriptions of the intruders and the gun.

Defendant became a suspect in the robberies. The police obtained a photograph of defendant from an arrest in Connecticut. The photograph depicted a scar under defendant's right eye.

2

A photo array lineup was conducted by the police two weeks after the robberies. The female victims identified defendant as the intruder who broke into their home and robbed them. The same day, a male victim of the second home invasion was shown the same photo array lineup, and identified defendant as the individual who broke into his home.

The photo array shown to the victims contained six photographs, one of defendant and five filler photographs. The photographs depicted black men with similar hair and skin tone. However, defendant's photograph was the only one with a mark under the right eye. The photo array identifications, while not recorded, were memorialized in written reports completed after the identifications.

The photo array shown to the two female victims was not double-blind because one of the detectives knew defendant was the suspect. Both women identified the photograph of defendant as one of the intruders. A different officer administered a double-blind photo array to the two male victims. One male identified defendant's photograph as one of the intruders. The other male was unable to identify the intruder from the array.

Defendant moved to suppress the out-of-court identifications. Defendant argued several deficiencies in the photo array tainted the identifications,

rendering the identifications inadmissible. Defendant's primary objection focused on the claim that his photograph was the only picture showing a man with a mark under his right eye. In addition, defendant contended the photo array shown to the female victims was not conducted in a double-blind fashion, and the police failed to make an audio recording while administering the photo arrays.

The Wade[1] hearing was conducted over the course of three separate dates. In a thorough and well-reasoned written opinion, Judge Patricia Wild denied defendant's motion to suppress the out-of-court identifications, finding the photo array, while "not perfect," was not impermissibly suggestive or fatally flawed.

Judge Wild found the fact that defendant was the only individual with a mark under his right eye "troubling" and "highly suggestive." The judge noted the photo array shown to the female victims were not performed in accordance with the double-blind requirement. Further, the judge found it was not clear if officer conducting the photo array gave proper pre-identification instructions. The judge acknowledged one of the female victims was under immense stress as she was assaulted and held at gunpoint during the home invasion. Similarly, the judge recognized the two-week delay between the date of the home invasion

---

[1] United State v. Wade, 388 U.S. 218 (1967).

and the date the photo array was shown to the victims. The judge also noted the absence of an audio recording of the identification procedure.

On the other hand, Judge Wild found the detective who presented the photo array to the female victims did not provide any feedback during the identification process. Additionally, the judge commented that the duration of the home invasion was lengthy, leaving ample time for the female victims to observe the intruders' faces in the well-lit house.

In reviewing the identification made by the male victim, Judge Wild noted the officer administered the proper pre-identification instructions, the array was properly displayed using the double-blind method, and the officer did not provide feedback during the photo identification process. While the photo identification was not recorded on audio, the judge found the officer prepared a written report of the identification in accordance with Rule 3:11.

After denial of his motion to suppress the out-of-court identifications, defendant pleaded guilty to an amended charge of first-degree robbery. As part of his guilty plea, defendant reserved the right to appeal the denial of his motion to suppress the out-of-court identifications. Defendant was sentenced to seven years in prison with an eight-five percent parole disqualifier, under the No Early Release Act, N.J.S.A. 2C:43-7.2.

A-1570-16T1

In his counseled brief, defendant raises the following point:

POINT I

THE TRIAL COURT ERRED BY FAILING TO SUPPRESS THE IMPERMISSIBLY SUGGESTIVE OUT-OF-COURT PHOTO ARRAY IDENTIFICATIONS OF THE DEFENDANT, WHICH WERE TAINTED BY FLAWS IN CONSTRUCTION, ADMINISTRATION, RECORDATION, AND RELIABILITY.

A. The construction of the photo array was impermissible suggestive.

B. Both officers failed to properly record administration of the arrays.

C. The witnesses were under enormous stress and subject to weapon focus during the encounter.

D. The arrays administered by [the officer handling the first home invasion] were given without any pre-identification instruction, and were not blindly administered because he had prior knowledge of the suspect.

In his pro se supplemental brief, defendant repeats the same arguments raised by his assigned appellate counsel. Defendant's pro se brief consists of eight separate paragraphs without point headings.

In reviewing a motion to suppress evidence, we generally defer to the factual and credibility findings of the trial court, "'so long as those findings are supported by sufficient credible evidence in the record.'" State v. Handy, 206

6

N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We accord deference to the trial court "because the 'findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

We affirm substantially for the reasons expressed in Judge Wild's comprehensive and well-stated written opinion. We add only the following comments.

Defendant argues the construction of the photo array was highly suggestive because defendant's picture used for the array was the only photo showing a person with any facial mark. Because his photograph was the only one with a facial mark, defendant claims his picture stood out among the six photos in the array, and created a greater risk he would be identified as the intruder on the basis of that feature alone. Defendant contends the detective should have searched for filler photos using facial markings in addition to hair and skin color.

In State v. Henderson, the New Jersey Supreme Court expressed that "'mistaken identifications are more likely to occur when the suspect stands out

from other members of a live or photo lineup.'" 208 N.J. 208, 251 (2011) (quoting Roy S. Malpass et al., Lineup Construction and Lineup Fairness, in 2 The Handbook of Eyewitness Psychology: Memory for People, at 155, 156 (R.C.L. Lindsay et al. eds., 2007)). The Henderson Court held identification procedures should use similar-looking people because "an array of look-alikes forces witnesses to examine their memory. In addition, a biased lineup may inflate a witness' confidence in the identification because the selection process seems easy." Ibid.

The Attorney General has promulgated guidelines regarding photo arrays and lineup identifications. See Office of the Attorney Gen., N.J. Dep't of Law and Pub. Safety, Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures 1 (2001) (Guidelines). The Guidelines require "fillers who generally fit the witness' description" of the suspect. Ibid. Section I.D. of the Guidelines provides: "In composing a photo . . . lineup, the person administering the identification procedure should ensure that the lineup is comprised in such a manner that the suspect does not unduly stand out. However, complete uniformity of features is not required." Ibid.

Even a poorly constructed lineup does not result in a per se "substantial likelihood of irreparable misidentification[.]" Henderson, 208 N.J. at 289. In the event of an imperfect lineup, the Henderson Court concluded imperfections could be addressed through an appropriate instruction to the jury. Id. at 252 ("[J]urors should be told that poorly constructed or biased lineups can affect the reliability of an identification and enhance a witness' confidence.").

In this case, the detective who testified during the Wade hearing explained he created the photo array with five filler photographs obtained through the Sheriff's Office County Identification System. The detective stated he searched for photographs of individuals with hair and skin color similar to defendant's features. When asked if he could find any photographs with a facial marking similar to defendant, the detective responded:

> There [were] people there with facial markings. But to find somebody with [a mark] under the right eye . . . I mean, you'll find people in there with tattoos all over their necks, scars on their faces, tattoos down the whole side of their face, all different things. But to find somebody that just has - like the victims described - the marking under the right eye and only the marking under the right eye, no, I couldn't.

In commenting on the absence of facial markings in the filler photos, Judge Wild wrote:

> [The detective] indicated that he first attempted to find appropriate fillers based on more general characteristics such as hair and facial structure. The [d]etective stated that once these specifications were put into the system, he could not find any individuals other than [d]efendant who had a similar marking under their right eye. Additionally, [one female victim] testified that her identification was made based on her recollection of the perpetrator from November 9, 2013, not the marking on [d]efendant's face.

Complete uniformity of features in a photo array is not required, particularly in this case because the detective was unable to find another photograph matching defendant's description, including skin, hair tone, and mark under the right eye. The photo array was otherwise fair because the array contained photographs of individuals with similar skin and hair tones. Moreover, if defendant had gone to trial, and the matter was submitted to a jury, the judge could have issued appropriate jury instructions regarding the construction of the photo lineup and its limitations.

Having reviewed the record, and based on the totality of the circumstances, we are satisfied defendant failed to demonstrate a substantial likelihood of irreparable misidentification related to the three out-of-court identifications. The judge's findings were supported by sufficient credible evidence in the record of the Wade hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-1570-16T1