**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1249-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TASHON RIVERA, a/k/a
TYJUAN RIVERA and
DAQUAN TABOR,

     Defendant-Appellant.

_____

Argued February 11, 2020 – Decided April 9, 2020

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-06-0500.

Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the brief).

Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Ali Y. Ozbek, of counsel and on the brief).

PER CURIAM

Defendant Tashon Rivera appeals from the denial of his suppression motion and the imposed sentence. We affirm.

We derive the facts from the evidence elicited during the suppression hearing. On December 31, 2015, at approximately 7:45 p.m., Paterson's "Violent Crime Suppression Unit" responded to a three-block area of North Main Street. Paterson Detectives Frank Brito and Christopher Ravallese were inside an unmarked car, dressed in plain clothes but wearing visible badges.

Brito and Ravallese stopped in front of a particular two-family house on North Main Street. Brito testified that he had been inside the house on at least five prior occasions and he had observed it was littered with garbage, needles, and paper used to wrap controlled dangerous substances (CDS). According to Brito, there were no beds, no working plumbing, and no electricity. The windows were boarded up and the front door did not have a knob on it. Brito referred to the house as an "unoccupied abandoned structure."

Ravallese testified that he was also familiar with the house. He stated it was not cared for and had "a lot of garbage and debris in front of it." Ravallese said the front door of the house was "usually locked and secured." He called the building a "secured abandoned structure."

2

As the detectives' car arrived at the house, Brito noticed the front door was open. He stated that defendant was standing in the doorway of the house "holding a charcoal bag" – what might be used to hold charcoal for a grill. Ravallese stopped the car. Both Brito and Ravallese recognized defendant, although they had not spoken to him before.

According to Brito, since that area is known for drug activity, "when [he] saw [defendant] in the doorway holding a bag, [he] believed that there was something going on, some type of criminal activity." Ravallese testified that, under the totality of the circumstances, he had a reasonable suspicion there was contraband in the bag.

When the detectives stopped their car and got out of it, defendant dropped the bag and began to walk down the outside steps. Ravallese testified he believed defendant dropped the bag in order "to conceal the [bag's] contents" after recognizing they were the police. Brito stopped defendant and asked him to take his hands out of his pockets. As defendant did so, a single glassine bag of heroin fell out of his pocket. Brito secured the glassine bag and arrested defendant. While searching defendant, Brito discovered four additional glassine bags of heroin in defendant's pocket.

A-1249-17T4

Ravallese stated he went "to the doorway of the abandoned house where [he] saw . . . defendant drop the bag." He said the bag was to "the right . . . of the doorway, immediately inside the front door." When he looked in the bag, Ravallese discovered "several glassines of suspected heroin, as well as suspected crack-cocaine." According to Ravallese, the bag contained "[sixty-two] glassines of suspected heroin . . . [a]nd . . . between [thirteen] and [fifteen] baggies of crack cocaine." The bag also contained a revolver.

Defendant was charged in an indictment with: third-degree possession of heroin, in violation of N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of heroin with intent to distribute, in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count two); third-degree possession of heroin with intent to distribute within 1000 feet of school property, in violation of N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-5(a) (count three); third-degree possession of cocaine, in violation of N.J.S.A. 2C:35-10(a)(1) (count four); third-degree possession of cocaine with intent to distribute, in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count five); third-degree possession of cocaine with intent to distribute within 1000 feet of school property, in violation of N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-5(a) (count six); second-degree unlawful possession of a handgun, in violation of N.J.S.A. 2C:39-

A-1249-17T4

5(b)(1) (count seven); second-degree possession of a weapon while committing a CDS offense, in violation of N.J.S.A. 2C:39-4.1(a) (count eight); fourth-degree possession of a defaced firearm, in violation of N.J.S.A. 2C:39-3(d) (count nine); and second-degree certain persons not to have a weapon, in violation of N.J.S.A. 2C:39-7(b)(1) (count ten).

Defendant moved to suppress the evidence seized from his person and the bag. He argued the police had no reason to search him and the house without a warrant. The State countered that the detectives conducted a valid investigatory stop after witnessing defendant drop the bag, and the search of the bag was justified because it was abandoned property or as a search incident to a lawful arrest. The State contended defendant's arrest was justified after the plain view observation of the glassine bag falling out of his pocket. The additional bags found in defendant's pockets were obtained lawfully as a search incident to arrest.

In an oral decision on December 13, 2016, the court denied the motion to suppress, finding, "under all the circumstances, . . . the police action was completely appropriate . . . ." The court also found both detectives credible in their testimony of the evening's events. The court noted the house was abandoned and in a high-crime area. When defendant recognized the detectives

A-1249-17T4

as law enforcement, the court stated he tossed the bag. Based on these findings, the detectives had a reasonable articulable suspicion of drug activity.

The court described the house as an abandoned structure – full of garbage, boarded up, and littered with drug paraphernalia. Therefore, the court noted, the detectives "had every right to reasonably conclude" that defendant, after realizing they were law enforcement, tried to conceal the bag by dropping it and then casually walking down the steps. The reasonable suspicion of drug activity justified the detectives' subsequent actions.

Because of the detectives' observations, the court found it was reasonable for Brito to ask defendant to take his hands out of his pockets. After the glassine bag fell out of defendant's pocket, the detectives had probable cause to search him. The court stated Ravallese had probable cause – and certainly a reasonable suspicion – to believe criminal activity was going on and to search the bag.

Defendant was found guilty on all counts by a jury. During the sentencing hearing, the State argued in support of its application for a discretionary extended term. Although the State's sentencing memorandum requested the court impose the extended term sentence on count eight, possession of a weapon while committing a CDS offense, N.J.S.A. 2C:39-4.1(a), when the prosecutor requested the extended term in court, he referenced count ten, describing it as

6

"the possession of a weapon during a [CDS] offense." When the court informed the prosecutor that count ten was the certain persons charge, the prosecutor responded "then under [c]ount [t]en . . . ."

The court found defendant was eligible for an extended term because of his prior convictions. The following sentence was imposed: (1) after the merger of counts one and two into count three, defendant was sentenced on count three to a five-year term of imprisonment, with a three-year period of parole ineligibility; (2) counts four and five merged into count six, on which defendant was sentenced to a five-year term, with a three-year period of parole ineligibility, to run concurrently to the sentence imposed on count three; (3) on count seven, defendant was sentenced to an eight-year term, with a four-year period of parole ineligibility, to run concurrently to the sentences imposed under counts three and six; (4) on count eight, defendant was sentenced to an eight-year term of incarceration, with a four-year period of parole ineligibility, to run consecutively to the sentences imposed under counts three and six but concurrently with the sentence imposed under count seven; (5) on count nine, defendant was sentenced to a term of eighteen months.

As to count ten, the court granted the State's application for an extended term and imposed a fifteen-year term, with a seven-and-one-half-year period of

parole ineligibility, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).  This

sentence ran concurrently to the sentences imposed under counts three, six,

seven, and nine.

On appeal, defendant raises the following issues:

> POINT I.  DEFENDANT'S CONVICTIONS MUST BE
> REVERSED BECAUSE THE TRIAL COURT ERRED
> WHEN IT DENIED DEFENDANT'S SUPPRESSION
> MOTION: 1) THE COURT MISAPPLIED THE LAW
> PERTAINING TO ABANDONED PROPERTY IN
> MULTIPLE RESPECTS AND ITS FACTUAL
> FINDINGS WERE CONTRARY TO THE
> EVIDENCE; 2) THE SEARCH INCIDENT TO
> ARREST EXCEPTION DID NOT APPLY BECAUSE
> THE CHARCOAL BAG WAS FAR BEYOND
> DEFENDANT'S GRAB AREA; AND 3) NEITHER
> PROTECTIVE SWEEP NOR ANY OTHER
> EXCEPTION BASED ON REASONABLE
> SUSPICION JUSTIFIED THE WARRANTLESS
> SEARCH.
>
> A. THE ABANDONED PROPERTY EXCEPTION
> DID NOT APPLY AT ALL.
>
> 1. THE STATE NEVER ALLEGED THAT
> DEFENDANT LACKED STANDING.
>
> 2. THE COURT IMPROPERLY RELIED UPON THE
> MORE RESTRICTIVE FEDERAL TEST FOR
> STANDING.
>
> B. THE COURT APPLIED THE WRONG LEGAL
> TEST IN DETERMINING THAT THE HOUSE WAS
> ABANDONED REAL PROPERTY AND ITS
> FINDING IS CONTRADICTED BY THE EVIDENCE.

A-1249-17T4

C. THE COURT APPLIED THE WRONG LEGAL TEST IN DETERMINING THAT THE CHARCOAL BAG WAS ABANDONED PERSONAL PROPERTY AND ITS FINDING IS CONTRADICTED BY THE EVIDENCE.

D. THE SEARCH INCIDENT TO ARREST EXCEPTION DID NOT APPLY BECAUSE THE BAG WAS LOCATED FAR BEYOND DEFENDANT'S GRAB AREA.

E. NEITHER THE PROTECTIVE SWEEP EXCEPTION NOR ANY OTHER EXCEPTION BASED SOLELY ON "REASONABLE ARTICULABLE SUSPICION" JUSTIFIED THE SEARCH OF THE HOUSE OR THE BAG.

POINT II. DEFENDANT'S SENTENCE MUST BE REVERSED BECAUSE THE COURT'S IMPOSITION OF THE EXTENDED TERM WITHOUT PROPER NOTICE VIOLATED THE COURT RULES, CASE LAW, AND DEFENDANT'S DUE PROCESS RIGHTS AND BECAUSE THE SENTENCE REPRESENTED AN ABUSE OF DISCRETION.

A. THE COURT VIOLATED STATE V. THOMAS, 195 N.J. 431 (2008), THE COURT RULES AND DEFENDANT'S DUE PROCESS RIGHTS WHEN IT IMPOSED AN EXTENDED TERM ON A CHARGE THAT WAS DIFFERENT THAN THE ONE REQUESTED BY THE STATE AND THAT HAD HARSHER EXTENDED TERM REQUIREMENTS.

B. THE COURT ABUSED ITS DISCRETION WHEN IT SENTENCED DEFENDANT TO A FIFTEEN-YEAR EXTENDED TERM WITH THE MAXIMUM PERIOD OF PAROLE INELIGIBILITY FOR HIS FIRST CONVICTION FOR WEAPONS OFFENSES,

WHICH INVOLVED THE POSSESSION OF A SINGLE HANDGUN IN NON-VIOLENT CIRCUMSTANCES.

We begin by addressing defendant's arguments regarding the suppression motion. In reviewing a motion to suppress, we defer to the factual and credibility findings of the trial court, "so long as those findings are supported by sufficient credible evidence in the record." State v. Coles, 218 N.J. 322, 342 (2014) (quoting State v. Hinton, 216 N.J. 211, 228 (2013)). Deference is afforded "because the 'findings of the trial [court] . . . are substantially influenced by [its] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to special deference." State v. Hubbard, 222 N.J. 249, 263 (2015) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). "A trial court's legal conclusions are reviewed de novo." Ibid. (citing Gandhi, 201 N.J. at 176).

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Under those provisions, a warrantless search is per se unreasonable unless it falls within one of the few well-delineated exceptions to the warrant requirement." State v. Citarella, 154 N.J. 272, 278 (1998) (citing State v. Demeter, 124 N.J. 374, 379-80 (1991)). "[T]he burden is on the State, as the party seeking to validate a warrantless search, to [establish] one of those recognized exceptions." State v. Alston, 88 N.J. 211, 230 (1981) (citations omitted).

Here, the State argued, and the court agreed, that the house was an abandoned property, and therefore, the police did not need a warrant prior to their search. Defendant challenges that finding.

Under both the United States and New Jersey Constitutions, abandoned property is an exception to the warrant requirement. Abel v. United States, 362 U.S. 217, 241 (1960); State v. Brown, 216 N.J. 508, 527-28 (2014). Our Supreme Court held in Brown that "to justify a warrantless search of a home, evidence of abandonment must be clear and unequivocal and judged objectively in light of . . . 'the totality of the facts and circumstances.'" 216 N.J. at 531-32 (quoting United States v. Harrison, 689 F.3d 301, 307, 309 (3d Cir. 2012)). "[I]f it is 'ambiguous to a reasonable officer whether a dilapidated house is abandoned

A-1249-17T4

. . . the officer [will] need to make further inquiries into the property's status.'" Id. at 532 (alterations in original) (quoting Harrison, 689 F.3d at 311 n.5). "In short, '[t]here simply is no "trashy house exception" to the warrant requirement,' and therefore '[i]t is unreasonable to assume that a poorly maintained home is an abandoned home.'" Ibid. (alterations in original) (quoting Harrison, 689 F.3d at 311).

The Court "identif[ied] some factors to be considered in determining whether, in light of the totality of the circumstances, a police officer has an objectively reasonable basis to believe a building is abandoned, thus justifying a warrantless entry and search." Ibid. It stated that "[n]o one factor is necessarily dispositive, and the weight to be given to any factor will depend on the particular circumstances confronting the officer." Ibid.

The Court advised that, "[i]n deciding whether a building is abandoned, or a person is a trespasser, one reasonable step an officer might take is to examine readily available records on ownership of the property." Id. at 533 (describing physical and online copies of deeds, tax, and utility records as potential sources). "Other factors to consider . . . [are] the property's condition and whether the putative owner . . . has taken measures to secure the building

from intruders." Id. at 533-34. Finally, "[a]nother factor is an officer's personal knowledge of a particular building and the surrounding area." Id. at 534.

It is undisputed that the detectives did not stop their official duties on the evening of these events and check the property records to ascertain the ownership of the home. However, as the Court stated in Brown, a check of such records is not "the exclusive means of determining" abandonment of property and is unnecessary if it will "compromise an investigation." Id. at 533 n.4. Both officers were familiar with the property – both described it as abandoned. Brito said the house inside was littered with garbage, needles and paper used in drug activity. There were no beds, working plumbing, or electricity. The windows were boarded up. Ravallese said the house was neglected, with garbage and debris in front of it. The house was in a high-crime area.

We are satisfied that the trial court's determination that the house was "an abandoned structure" is supported by the credible evidence. Although the court made a fleeting reference to defendant's lack of any expectation of privacy in the property, that standard was not dispositive to its decision. The court extensively outlined each detective's description of the property prior to finding "from every appearance [this] was an abandoned structure." We reject

defendant's argument that the court applied the wrong standard in making its determination.

Furthermore, the court also found the bag was abandoned. As the court stated, upon recognizing the officers, defendant tossed the bag and walked down the stairs. The court stated the police had "every right to reasonably conclude that upon seeing the police [defendant] was trying to secrete the bag or get rid of the bag and then walk down the stairs seeming to be walking out normally . . . ."

Property is treated as abandoned when discarded. State v. Gibson, 318 N.J. Super. 1, 11 (App. Div. 1999) (citation omitted). Because defendant "knowingly and voluntarily relinquishe[d] . . . possessory or ownership interest" in the bag, State v. Johnson, 193 N.J. 528, 549 (2008), it was abandoned, and defendant cannot challenge its search or the seizure of the evidence in it.[1]

We turn then to defendant's challenge of his sentence. He contends he was not given proper notice of the request for an extended term. Under N.J.S.A. 2C:44-3, a court may sentence a defendant to an extended term of imprisonment

---

[1] Because we discern no error in the court's conclusion that the warrantless search was justified under the totality of the circumstances, we need not address defendant's alternate arguments.

if certain requirements detailed in the statute are met. The State must notify defendant and the court it intends to request the sentence. "Where multiple offenses are charged, that notice obviously should include an identification of the offense with respect to which the prosecutor is seeking an extended term in order to give the defendant a fair opportunity to meet that claim." State v. Thomas, 195 N.J. 431, 436 (2008).

Defendant contends that the State's sentencing brief asked the court to sentence him to an extended term of twenty years with a ten-year period of parole ineligibility for count eight, second-degree possession of a weapon while committing a CDS offense, in violation of N.J.S.A. 2C:39-4.1(a). However, during the sentencing hearing, the State reiterated its request but referred to count eight as count ten. After the court informed the State that count ten was a different charge, the prosecutor and the court proceeded under the mistaken assumption that the State was requesting an extended term for count ten. Defense counsel did not object or inform the court of the error. Defendant says that the substitution of count ten for count eight deprived him of the required notice.

A-1249-17T4

Although the prosecutor misspoke in his oral application to the court, the error did not prejudice defendant. To the contrary, the error resulted in a more favorable sentence than was originally sought.

Defendant faced thirty years under the original request – a twenty-year extended term sentence, with a ten-year period of parole ineligibility, under count eight, to run consecutively to a ten-year term for count ten. In contrast, the court sentenced defendant to a fifteen-year extended term, with a seven-and-one-half-year period of parole ineligibility – half of the originally requested sentence. The error was harmless. We discern no abuse of discretion in the imposed sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1249-17T4